May it please the court. Good morning. My name is Jeff Rasmussen. I am the attorney for Judge Mary Seaworth. Judge Seaworth is a judge in the MHA tribal court system and is the chief judge of that system, but hasn't done anything with this case. Wasn't on the case. The other side was where she was not on the case. She has administrative powers to assign cases among the judges. She does not have the administrative powers to assign the cases amongst the judges. The cases are assigned by the clerks. Are you sure of what you just told me? I've not seen a court where the chief judge didn't have some power to move the cases around at some point, somehow. Oh, the judge would have the power probably to move the cases around. That's all I was trying to say. Ministerial function, I get it, but I wanted to know about it. Yeah, no, she hadn't ever exercised any authority over this case. In this case? Yes. Okay, you were answering in this case and I was talking generally. Okay. The issues that I want to discuss, and there are four issues that we go through in our brief, and I'm going to attempt to save five of my minutes for rebuttal, but the issues that I wanted to discuss mostly were the exhaustion issue and the ex parte young issue. Briefly, we'll touch on the others to the extent I have time. The exhaustion issue in this case is whether the tribal court remedies have been exhausted. The district court judge said that tribal court remedies had been exhausted. Every single case that has come out of a federal court is contrary to that. As the court knows, there are different ways one can challenge jurisdiction. One can challenge jurisdiction on the pleadings. One can challenge it basically on summary judgment standard, or one can decide it on the facts. On occasion, when we get a jurisdictional issue, we actually have it intertwined with the facts such that it can't even be decided until the case goes to trial. But there are all those different possibilities. In this particular case, it was the plaintiffs here, defendants in the tribal court, had the choice of how they chose to make their challenge. They chose to challenge the jurisdiction in tribal court solely on the pleadings. That's fine, but then they can't go to federal court and then say, oh, we've exhausted tribal court remedies. Does the Stradi case answer this counsel where it says tribal exhaustion is prudential, not jurisdictional? The exhaustion cases say that while it is prudential, it is a requirement. So it's not something this court can then say, oh, we're just going to let it go. What about the next part of Stradi, the black letter that says the federal court should stay its hands until the tribal court determines its own, I'm quoting the Supreme Court, its own jurisdiction? Right, and we don't have that yet. Well, I thought you had gone all the way to your highest court determining about jurisdiction. But solely on the basis of let's assume all the facts that are pled in the complaint are true. This is their choice. Let's do our challenge on that basis. And they're coming into this court now and saying their argument to this court is basically, well, the tribal court had its opportunity, but the tribal court decided the motion that they brought. They brought the motion solely on the pleadings, not on the facts. So at this point, we've got a decision saying if these facts are true, we have jurisdiction. That's all we have from the tribal court. And we don't have then a decision on actual the merits of jurisdiction. Do we actually have jurisdiction based upon the actual facts, just on the pleadings? Counsel, what purpose would further development of the factual record serve other than delay? Development of the factual record, first of all, is one of the core requirements for purposes of the exhaustion doctrine. And the other core purpose of the exhaustion doctrine is to prevent what we've got here, which is this kind of piecemeal litigation. We can go through the tribal court. We decide the jurisdictional motion on the pleadings. Then we go to federal court. Then we go to federal court of appeals. Then we go back. Then we'll decide the tribal court jurisdiction on the facts. Then we'll go to the federal court. Then we'll go to the federal court of appeals. Then we'll go back. And that's the problem we have here, that the purpose of the exhaustion doctrine is to prevent that sort of piecemeal litigation. And in this particular case, the plaintiffs in this case actually asserted to Judge Hovland, well, we don't have the facts sufficiently developed here. And, therefore, they're making arguments based upon the presumptions against tribal court jurisdiction, but then using the fact that they didn't get the facts developed as support for that. For example, saying, we don't actually have the contract in front of us. Well, the contract was pled in the tribal court case. Is the contract incorporated in tribal court pleadings so we can take judicial notice of it or not? No, the contract is not. There was a form contract that was submitted. And so the plaintiffs in the federal court case said, see, this isn't sufficient to show tribal court jurisdiction. Tribal court found it had jurisdiction, but there's not a signed contract here. So they were trying to use the fact that they hadn't developed the facts in the tribal court to then say the tribal court didn't have sufficient evidence to find that it had jurisdiction. But the complaint in the tribal court clearly pled, yeah, there's a contract here. This is involving tribal members. This is what the basic structure of it is. So the facts had been pled. And if they wanted to challenge that, they should have done it. All of the cases that discuss this say that, yeah, no, we don't do it in this way. We don't do it in this piecemeal manner. We don't go up on, we let the tribal court make its decision on jurisdiction. And then once it's done that, then we go forward with the federal review. So we don't have, and again, Judge Hovland said tribal court remedies have been exhausted. That was just wrong. Tribal court remedies had not been exhausted based upon these facts. So then the plaintiffs go on to argue to this court, well, the tribal court wouldn't have jurisdiction. And so exhaustion wasn't necessary. And we believe that, again, the standard is just, is there a plausible case for tribal court jurisdiction? And there clearly is here. The standard really is, the rule is exhaustion of tribal court remedies. And it's only if it's plainly violative of federal law that we would not have to have exhaustion of tribal court remedies. And so basically, as we say in our brief, the standard is, unless it's incredibly clear that there's no chance that the tribal court has jurisdiction, the case has to go there and has to have exhaustion of remedies. Then we go on to, in the tribal court case, even if we went on to that issue, here we've got a standard contract issue. That's what we have in this case. There is a contract to pay certain amounts of money for oil and gas. Here we're talking about the gas and whether they've paid that amount of money. It's a straight contract issue. The contract involves questions of tribal law, could involve questions of federal law, depending on how that issue gets decided. But it's still a straight contract, consensual relationship, all of the hallmarks for tribal court jurisdiction. So even if we went on to that issue that the plaintiffs want to go on to, of was there tribal court jurisdiction, even if we hadn't exhausted tribal court remedies, that's an easy one. The other issue I wanted to go on to is the Ex Parte Young issue. Ex Parte Young, as you know, provides a standard for when a state officer can be sued in a federal court. And under existing Eighth Circuit precedent, that has been applied to tribes. And there's no indication that the standard is any different for tribes than states. And here we have Judge Hovland issuing a decision which really just wipes out Ex Parte Young. The limitations on Ex Parte Young makes it so you always go to the federal court. He said, well, they pled a case for injunctive and declaratory relief, therefore they've met the requirements for Ex Parte Young. There's no ongoing violation of federal law here. One of the oddities of this case is that plaintiffs essentially won in the tribal court. Tribal court said, stay the case. Yeah, we have jurisdiction based on the pleadings, we have jurisdiction, but stay the case. So how you get an ongoing violation of federal law in this case, I don't know. The judge didn't explain it because he didn't go on to that element. We also don't have the people who were making the decisions. They knew who the judge was. They didn't sue the judge who was doing this case. They cited some other cases where they say, look, this has happened before. None of the cases that they cite actually support what they say. They cite a case out of Arizona or maybe New Mexico, Ninth Circuit eventually, that decided that, yeah, you can sue the tribal court judge, the chief judge. But in that case, it was specifically pled, he was not only the chief judge, he was the presiding judge. And here we don't have that. And so those are the main issues I wanted to cover in my opening. I'm going to turn it over to co-counsel who will take his time now. Thank you. Very well. We'll hear from Mr. Soderstrom. Good morning. Thank you. Good morning. May it please the court, counsel. My name is Reed Soderstrom, and I represent the individual, India Nalatiz, represented in this case. I'd like to pick up where Mr. Rasmussen left off with the highest court at MHA Nation, the sovereign nation of the three affiliated tribes, where they had held the tribal court matter in abeyance. And they'd actually ruled that you have to exhaust, we have to exhaust federal court administrative remedies. So when you take that context and bring it before the Honorable Judge Daniel Hovland for a preliminary injunction, you cannot meet the data phase factors that he relied upon to give the injunction. The irreparable harm certainly does not exist because everything's been stayed. And, in fact, when it goes through an administrative matter at the federal level, there's a very good chance that this matter may be wholly and completely resolved. So there was no irreparable harm. The plaintiff appellees, I'll call them oil companies, have been doing business as usual without interruption. And that has been going unabated despite this lawsuit. I thought just one of them was really doing business. I thought two of them were no longer even doing business. They've merged or been assigned to other companies, but their production wells continue. Okay. So the data phase factors cannot be met. As far as a probability of success on the merits, that couldn't be decided because the federal administrative matter will decide that issue, and I don't know which way that's going to go. In weighing public interest, do you weigh the Indian allottees, or is there another oil and gas interest to be weighed in the public domain? My point is that the data phase factors could not be reached and the preliminary injunction could not be granted. In regard to the Montana exceptions, I want to emphasize that it was the non-Indian oil companies that have come on to the sovereign nation of the three affiliated tribes, and they have come to that within that exterior boundary of the reservation. They have sought leases with enrolled members of the tribe. And, Justice Benton, you asked for that contract. It's on page 156 of the appendix. And they've come on. They've entered into leases with enrolled members of the tribe, many of whom still reside and live on the reservation on tribal trust land. They have obtained right-of-ways, easements, and by a federal delegation of power through the inherent sovereignty of the tribe, with Indian preference, non-Indian companies have had to get approval and get permission to come on to the reservation through the TARO, Tribal Employment Rights Office. There's a simple question I don't get, and I think the Supreme Court's half-answered it. Are these allotted lands, quote, tribal land, unquote, or not? It's synonymous with being in trust, held in trust. But in my definition, Your Honor, there are two types of tribal land, one owned in trust by the individual allottee. And sometimes it's very fractionated, as you know, but when it's one over one, they own the top and the bottom. Sometimes it's fractionated incredibly by the hundreds and thousands, sometimes tens of thousands. The tribe owns, I think, 60% of the land in the tribe itself. It's close to 50-50, I guess, but there is a dichotomy there between the tribal trust lands and the enrolled members who own it in fractionated various fractions. Does the Supreme Court apparently equate the two or not? I believe it does. Okay. What's the best case, if you know, where the Supreme Court equates the two or doesn't equate the two? I believe the best case may be Plains Commerce, where they equated the two as far as Indian land being transferred into fee simple and anything held by the tribe or by the enrolled members held in trust. There are some enrolled members that own the land in fee as well, so they don't have to own it in trust. But the Indian trust land is protected by the sovereignty of the tribe and through the BIA. And it's with that consensual agreement that the non-Indian oil companies have entered into with tribal members that I believe gives rise to the Montana exception. So if we want to even get the jurisdiction, if the data phase factors have been met, and I don't think they have, certainly the Montana exception of consensual relationships exists. This reservation, the three affiliated tribes, is maybe not the same as what we've read about in nationwide media. The affluence that's come to the reservation, in my opinion, people are grateful for. And I've seen people go from rags to riches overnight with this, and it's amazing. All they want is to protect their sovereignty and enforce a simple contract action. So with that said, I'll take any questions that you may have. Thank you, Mr. Satterstrom. I think your time's expired. Thank you. Thank you. Mr. Abrams. May it please the court. Good morning. My name is Michael Abrams. I am here on behalf of the Appalachian Kodiak Oil and Gas, and the Appalachians have agreed to split our time by subject matter. Mr. Thompson, counsel for EOG, will address the tribal court exhaustion, subject matter jurisdiction, and sovereign immunity issues. And I will attempt to address the issues relating to the preliminary injunction elements, the data phase elements, and the Montana analysis in particular. Does your client still have any standing in this lawsuit? I realize the EOG definitely does. Yeah. But how about you? I don't think you have any standing. Your client, I don't mean you. You can make the argument, of course. Well, Your Honor, Kodiak has sold its interest to a successor, but as part of that transaction, still holds certain indemnification relating to liabilities that are on the reservation. But you're asking for an extraordinary remedy of a preliminary injunction for something you don't even own anymore. Well, Your Honor, we're standing. That's out there a little bit. Go ahead. Well, Your Honor, we still have obligations there as part of the transaction. We're really there in the name of the party that's acquired. The stuff you're telling me, is it in the record? Was it before Judge Hovland? Yes, Your Honor. There is a footnote where we explain that Kodiak's relationship with Whiting, and frankly, there's been a transaction since then. But we still have obligations, contractual obligations. I realize one of you does. Go ahead. Yeah. So, appellants characterize this action as a simple breach of contract. And I think they use the words today, straight contract issue. However, the nature of that contract is most critical to understand and decide the jurisdictional issue in this case. We have, as Mr. Rasmussen mentioned, we do have the form contract, although we don't have signed contracts, but there's no disagreement that this was the form contract. If you're going to have a lease of oil and gas interests on allotted lands, you must use the contract. That's in Appendix 156. There's no dispute that mineral development on lands allotted to individual Indians is subject to pervasive federal law and regulations. The contracts in oil and gas mining lease promulgated by the United States Department of Interior, it's subject to 25 U.S.C. Section 396. Before we get too far away from that, what about the bare naked words of the Supreme Court in Montana, on the first exception, a tribe may regulate the activities of nonmembers who enter consensual relationships. You know what it says. I don't have to quote it to you. It fits this case like a glove. Well, Your Honor, let's go to that. The piece that I think that is missing here is that under the Montana analysis, it teaches that there is a presumption against inherent tribal sovereignty to regulate nonmembers, limited to the two limited exceptions. Both exceptions stem from the same tribal interest. And what's important to read, I think the court clarified it in Plains Commerce Bank most explicitly. They exist as required to regulate nonmember behavior that implicates tribal governance in internal relations, or to regulate nonmember conduct that imperils the existence of a tribal political entity. And the point, Your Honor, is how could the tribe's sovereign interests be implicated when royalties for flared gas on allowed-in lands has long been removed from tribal control by federal law and jurisdiction. So I think if you read, I think Plains Commerce is a very important case here because it further explains that first Montana exception, is that it's not just a consensual relationship. It's more than that. What you need is you need to look at it in the context of whether it implicates tribal governance in relations. And, Your Honor, the point we're making is how could it possibly affect tribal governance in relations when all of this has been removed from tribal control? Your Honor, I don't know if that addressed your issue. Sure. So you think Plains Commerce limits Montana? I think it gives the explanation that was always in Montana. I think it's a great clarification of what the Supreme Court's development of this issue is. Going back to the contract. Is Plains Commerce limited to non-Indian fee land? Your Honor, on the question of land, yeah. I think for a lot of respects that it is. Yes. I do believe that, Your Honor. Going back to the contract itself. The area director of the Bureau of Indian Affairs is a signatory to the agreement. The contract specifically states it's subject to Department of Interior regulations. The federal contract form repeatedly refers to the authority of the Secretary of Interior and those acting under the Secretary's authority. The form gives the Secretary broad discretion to restrict drilling for production purposes. It requires the lessees, my clients, to abide by and conform to any and all regulations of the Secretary of Interior. I think, Your Honor, the district court got it right when it recognized that the determination of whether plaintiffs breached the mineral leases by failing to pay royalties for flared gas is entirely controlled by federal laws and regulations. Why can't the tribal courts enforce that? Your Honor, that is because if you look to the Supreme Court's analysis in Plains Commerce, the tribal court's jurisdiction is limited to their adjudicative authority. If they don't have adjudicative, I'm sorry, their legislative authority. If you don't have legislative authority in an area, you don't have adjudicative authority in this area. This goes to the notion, which is made plain in Novotavy-Hicks, is that tribal courts are not courts of general jurisdiction. They are not like state courts. They are courts of limited jurisdiction. These are federal questions that need to be decided by federal courts. And the district court recognized that all of these issues, whether royalties are due, recovering any royalties that may be due, distributing any royalties to individual lattice, all is subject to federal control. So given that the tribal courts stayed for exhaustion of the federal administrative remedies, what's the irreparable harm? Your Honor, an irreparable harm is, first of all, you have to understand that the plaintiffs in the underlying case have not stopped once there was a decision by the tribal court. There was failure to mention the fact that there was a motion for class certification, and continue with the case. I don't want to interfere with Mr. Thompson's portion of the argument, but the Tribal Supreme Court made absolutely clear that they have jurisdiction over this case. They're going to send some issues, and it wasn't really completely clear to us, some issues to the administrative agencies, but to decide what is due under those flaring agreements, whether flaring was avoidable. Those are issues that are going to be decided by the tribal court. And the irreparable injury here, Your Honor, is every time that we're, every day that we're in tribal court, that we don't have our ability to litigate this case in federal court. The fact that we're facing a motion for class certification in tribal court, even though there was this, you know, this tribal Supreme Court decision that they were going to defer some decisions to the administrative agencies is irreparable injury in this case, in our point. Well, the other parties didn't talk about the second Montana exception, and I'm not sure we need to get there here, but I'll touch briefly on it just to the extent that there is any interest. It doesn't apply at all, right? It's just too far removed from this case? It's too narrow, Your Honor. It's got to be an action that imperils the substance of the tribal community. This is not a situation like we have in other cases, attorney's process or others, where, you know, someone has stormed the tribal governing offices. If they were suing you for your health hazard, though, right, it might be the second one. It would be a different and interesting question. That's not what's happening here. This is a breach of contract matter on a federal question, but it would be an interesting, different analysis. They're suing you for money, right? Correct, Your Honor. This is not a question about whether they're trying to enforce the health and welfare of the population by, you know, some kind of air rights or things like that. I still think that there would be significant issues with jurisdiction, given the fact that the federal government has regulated completely in this area, but that's not our question. Our question simply is between allotted landowners. I do want to get to that question at the risk of running out of time. The court had a question about land status and about, you know, what are tribal lands, and I will note that there is a little bit of confusion, I think, in the various Supreme Court cases, if I could be so bold, about talking about tribal land. But if you go back to Pofa Bitty, which is back in 1968, the Supreme Court held that allotted lands are held in trust by the United States for the benefit of individuals and not for the tribe as an entity. And if you look at Montana, the allotment of reservation lands to individual Indians was removed from the tribe's ownership interest in allotted lands. And Montana equates allotment of Indian land with the dissolution of tribal affairs in jurisdiction. If you go all the way back to Heckman, which is more than 100 years ago, a 1912 case, it reviews the history of allotments, which is really fascinating, of tribal lands to individuals under legislations that, quote, contemplated the dissolution of the tribal organizations and the distribution of tribal property. And I think it's also important to look at the constitution of the three affiliated tribes itself, of the Fort Bertolt Indian Reservation, and we cite this in our brief, that allotted lands are an exception to the power of the Tribal Business Council, and it defines tribal lands as unallotted lands. So sometimes the Supreme Court uses the loose term as tribal lands as anything that's within the boundaries, the outside boundaries, perimeters of the reservation. But I think clearly if you look at the various cases that have developed this, that allotted lands are different. They're held in trust. That's why we have a lease from the Secretary of Interior that deals with these lands differently. Well, Your Honor, I'm out of time, and I don't want to be rude, and I'll yield my time to Mr. Thompson unless there's any questions. Hearing none, we'll hear from Mr. Thompson. Good morning, sirs. Good morning. I'm Rob Thompson, counsel for EOG Resources. Thank you for having us here today. I do have two assignments to address, but then I wanted to touch on a few other things that have come up. With regard to I'll call them the tribal official appellants, argument is to exhaustion. I would simply refer the court to Hicks and to Belcourt Public Schools that require exhaustion of the jurisdictional claims. I am not aware of any case ever decided in a federal court that would require the defendants in a tribal court action to litigate their case on the merits prior to seeking intervention by a federal court. Apart from that, I'm also not sure both the Tribal District Court and the MHA Supreme Court believe they had a sufficient record in front of them to determine they had jurisdiction. And they did determine they had jurisdiction. I don't know what additional facts would be required to reinforce the fact that they've already determined they have jurisdiction. Nor am I aware how that issue could be reintroduced because I would expect very capable opposing counsel to argue to the court that the finding of jurisdiction was the law of that case. That it has been fully and finally determined. So going back through their exhaustion suggestions as to be a trier of facts, the Tribal District Court and the MHA Supreme Court said we have all the facts we need to determine we have jurisdiction. It was that simple. With regard to the ex parte Young discussion, it traces all the way back to Santa Clara Pueblo where the Supreme Court first introduced the idea that tribal officials could be named in the functional equivalent of an ex parte Young case. Recently reinforced in Bay Mills Indian community. In this instance, as I understand the argument, tribal official appellants suggest that for some reason we named the wrong official. That's my simplistic reading. The judge who handled this case, Mr. Pechota, was sitting in this case by special designation on a limited contract. I have no idea if Mr. Pechota is even affiliated at this juncture with the tribe's tribal official. Don't you have to find out? I'm sorry, sir? Don't you have to find out the status of your defendants? Just like we're, which oil company do you represent? EOG. Okay, you've got standing. Just like we bother you about your standing. How about on them? Don't we have to know whether this defendant is still even alive or something? Well, I think I understand where you're going, but when I stray, bring me back. Yeah. Mr. Pechota would not have the ability to determine whether he was going to hear this case. Who decides that? In my humble opinion, that would be the chief judge, Your Honor. Okay. Do you have any authority for that? That's what we look for next, is authority. Regrettably, no. Huh. Do they have rules for that court? There are rules for that court. I am not privy to what the court's internal administrative rules may be. Yeah, I'm talking about their published rules for starters. They do have published rules. And some courts publish their internal operating procedures. We do. I have never seen a publication of those rules, and we operate under the presumption that the chief judge would make that decision. Recently, as an example, and I did come to this court, there was an issue over a pipeline being placed under Lake Sacagawea. The officer enforcing that challenge was not the chairman of the tribes. The chairman of the tribes, however, was named as the defendant, and no one had any problems with that. And I think that equates here. Talapaloco has a tribal town, has a wonderful discussion of the process for going through to challenge tribal court jurisdiction, which all of the defendants in this case did. And now I'm going to freestyle for a moment. The court did ask a question about irreparable harm. Crow and Don Levy, Fort Yates School District, both point out that being subjected to trial in court without jurisdiction can be the equivalent of irreparable harm. Now, you're referring to the Crow case, right? Crow and Don Levy. Well, this court has limited Crow. You're aware of Dish Network, I bet. Yes, sir. We expressly limited it. Yes, sir. So I don't think Crow's much authority here. You think it is? Well, if it's not, let's... I believe it's still authority that if you can show harm, that that can be one element of the harm. Crow applies in the Eighth Circuit in the unique circumstances where sovereign immunity would prevent the plaintiffs from recovering fees paid in the course of litigation. Does sovereign immunity prevent the plaintiffs from recovering fees paid in the course of litigation? Yes, sir. As in this case? Would that apply in this case? Yeah. Even if it did, let's assume it does. Let's assume you're absolutely correct on that point. I was quoting it. I understand, sir. I'm not disputing what you're saying. I know that. There are other issues here. And for me, this is not a simple contract claim. It is a federal contract claim. All of these issues are decided by BLM in accordance with delegated authority from the Secretary. There are two types of potential irreparable harm here. Number one is we could easily be subject to inconsistent obligations. If the tribal court decides we've avoidably vented or flared and BLM has decided we've unavoidably vented and flared, to whom do we owe allegiance? Didn't the tribal Supreme Court already take care of that? Talk about that. They said we're going to remand for administrative determined by the BLM before we do anything else to avoid inconsistency. They attempted to do so, Your Honor. And then plaintiffs came back to the district court seeking a class certification and a ruling that exhaustion of administrative remedies were futile. So we would have been off all over again. The race restarted at that point. None of the appellees here started this case until those actions occurred. A quick point on allotted lands. And it's, no, allotted lands and tribal lands are not one and the same. And I think the easiest indication of that is all Indian lands in trust, the bare fee for those lands is held by the United States. The beneficial owner of tribal lands are the pertinent tribe. The beneficial owner of allotted lands are the allottees, not the tribe. These are not tribal lands. And no allottee is going to want someone to tell them they're tribal lands. That's their property. I'm sorry. There had also been a question asked about the individual contracts. I'll do this real fast. The appellees made motions to dismiss this case and brought the matter before the MHA Supreme Court that no one had ever introduced contracts showing a consensual relationship. They said they didn't need them. Thank you. And I would just close with asking this honorable body to affirm the district court's decision. Thank you. Very well. Thank you, Mr. Thompson. Mr. Rasmussen, you have some rebuttal time, I think. Thank you, Your Honor. I want to close with talking about irreparable injury. But I want to first go back to the discussion about basically them naming the wrong party. Mr. Thompson brought up the Paradigm case. And I don't have the actual site of that case. It was a district court case that then came to this court and was dismissed as moot. But in that case, it exactly illustrates what we're saying. The named party was the one who issued the order. The chairman was the one who issued the order. And that's why he was sued in his individual capacity. Are there rules for this court or not? Are they public or not? Yes, there are rules for this court. The internal operating procedures are not published. But there are rules. Yes. Do the rules say the chief judge can assign the judges? I don't believe that's in the rules anywhere, no. I believe that here, and this isn't an issue of whether the chief judge could assign the case. But this case was assigned to Judge Pechota. Counsel, in Ex parte Young, the key is some connection. We have a lot of cases that say that. There only needs to be some connection between the officials and the enforcement. And we've gotten governors who just have a general power over something. Right. OK. So that's the only reason I'm beating on that. OK. And in this particular case, the judge doesn't have, this isn't the judge who issued the order, obviously. And they knew who the judge was who issued the order. And the cases that they've relied on are cases where the actual person issuing the order is the one that is sued. The Ex parte Young issue, though, is also, as we mentioned, an ongoing violation of federal law. And I think it's been clear that there's not an ongoing violation of federal law here. That that's why an injunction shouldn't have been issued. And in addition, that there's not the irreparable injury for that. In our brief, we do cite to this court the Osborne case, which is the Eighth Circuit case that discusses how you can bring different types of challenges to the pleadings. And the plaintiff's argument here is basically that even though they only challenged it on the pleadings, that the tribal court could have gone on to decide it on the facts. And that's not what tribal courts do. That's not what this court does. This court wouldn't say, oh, you only challenged it on the pleadings, but I'm going to go on to the facts. It would say, it could say, I need the facts, and give me the facts. But it wouldn't change the party's pleadings themselves. I want to see if I've got anything else that I needed to cover before I go on to the irreparable injury issue. Well, two things, I think. One is when the court did its analysis of the balancing of the harms, you'll notice it did not even mention the harm to the tribal court. It didn't discuss harm to the tribal court. And that is a factor, a big factor, we believe. But when it discussed the irreparable injury, the court's wording was virtually the same as the wording that this court reviewed in Dish Network. Dish Network was a case that Judge Hovland decided. And this court reversed him. And this case is almost the exact same wording of saying, well, it's irreparable injury because they could have litigation costs. So when the court asked Mr. Thompson about why there was irreparable injury, he said, well, they filed a motion. The tribal court plaintiffs filed a motion for seeking class certification. What he didn't mention to you is the tribal court didn't do anything with it because the case was stayed. He also didn't mention to you they filed a new motion to dismiss because their first motion to dismiss hadn't been sufficient to get at the merits. So they filed a new motion to dismiss. Tribal court didn't touch that either because the case has stayed. And there's no ongoing injury here. And so for that reason alone, the district court's decision to issue an injunction should be reversed. And that is then what we would request this court do, and that it reverse the district court, send this case back for exhaustion of tribal court remedies if and when the federal agency ever actually makes its decision on the issues in front of it. Thank you. Thank you, Mr. Rasmussen. Counsel, the court appreciates your appearance and arguments today. The case will be submitted, and we'll issue an opinion in due course.